# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| X CORP.,<br><br>   *Plaintiff*,<br><br>  v.<br><br>DO MINH THANG, PHAN NGOC TUAN, NGUYEN NGOC THANH, LE DINH CHUNG, NGUYEN NHU DUC, NGUYEN VIET KIEU, DO VIET KHANH, DO XUAN LONG, AND JOHN DOE NOS. 1-25,<br><br>   *Defendants*. | **Case No.** _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff X Corp. ("X"), by and through its attorneys at Cahill Gordon & Reindel LLP and S|L Law PLLC, brings this action against Defendants Do Minh Thang, Phan Ngoc Tuan, Nguyen Ngoc Thanh (a/k/a Thanh Nguyen), Le Dinh Chung (a/k/a David Le), Nguyen Nhu Duc (a/k/a Duc Nguyen), Nguyen Viet Kieu (a/k/a Kieu Nguyen), Do Viet Khanh (a/k/a Khanh Do), Do Xuan Long (a/k/a Long Do), and John Doe Nos. 1-25 (collectively, "Defendants"), alleging as follows:

## NATURE OF THIS ACTION

1.      X Corp., which operates the online platform known as "X," brings this action to halt the Defendants' ongoing scheme to use computer bots and other tools to manipulate content engagement metrics on the X platform and steal funds from deserving content creators through X's Creator Revenue Sharing Program.[1] Defendants are members of a criminal enterprise (hereinafter, the "Enterprise") that has engaged in a pattern of racketeering activity, defrauded X, misappropriated its trademarks, breached numerous provisions of the X Creator Revenue Sharing Terms (including provisions of X's Terms of Service, Platform Manipulation and Spam Policy, Misleading and Deceptive Identities Policy, and Financial Scam Policy, all of which are incorporated by reference into X's Creator Revenue Sharing Terms[2]), unjustly enriched themselves at X's expense, converted X's property, and knowingly, intentionally, and without authorization accessed legitimate X user accounts.

2.      X is a real-time, open, public conversation platform, where people can see every side of a topic, discover news, share their perspectives, and engage in discussion and debate. The X platform has hundreds of millions of active users worldwide. More than 70 million X accounts

---

[1] Prior to November 8, 2024, the Creator Revenue Sharing Program was called the Ads Revenue Sharing Program.

[2] In January 2025, X's Platform Manipulation and Spam Policy, Misleading and Deceptive Identities Policy, and Financial Scam Policy were consolidated into X's Authenticity Policy, which was also violated by the Defendants.

have been registered from Texas.

3.     To create a forum for a global conversation, X allows its registered users to post and share content, including written comments, images and videos, known as "posts," and to share, like, and comment on other users' posts.

4.     X offers various product features to its users, including a Creator Revenue Sharing Program, which lets eligible X accounts share in X's revenue based on engagement and replies to content that they post on the X platform. The Creator Revenue Sharing Program is designed to incentivize content creators to post content on X that is engaging and will attract users to the platform. To that end, it financially rewards eligible X accounts for posting content that engages users. The more engagement an account generates, the more the account holder is financially rewarded. Thus, if an eligible account posts content that generates a significant amount of "likes" and "reposts" from other users, the account holder will be financially rewarded—and the more engagement, the larger the financial reward will be.

5.     Defendants' scheme involves the systematic, intentional manipulation of certain X platform engagement metrics. Through their scheme, Defendants fraudulently obtain payouts from X's Creator Revenue Sharing Program by manufacturing the appearance of content engagement where none really exists. X's investigation has revealed that Defendants engage in this manipulation by using computer bots and automated scripts, and, upon information and belief, using stolen identities of United States citizens, including stolen U.S. drivers' licenses and identification cards of U.S. citizens, to perpetrate their fraudulent scheme.

6.     Specifically, Defendants use coordinated networks of inauthentic X accounts to post computer-generated or computer-augmented content. These bot-controlled accounts then repeatedly "like," "repost," and artificially engage with each other's content to create a false

appearance of genuine, human communication and interaction, which fraudulently increases Defendants' share of payouts from the Creator Revenue Sharing Program. Defendants have perpetrated their scheme with the intent to deceive X into concluding that the accounts they control are the accounts of legitimate content creators deserving of payment under the Creator Revenue Sharing Program, and to induce X to rely on their false representations in making such payments to Defendants. Just as a broker in the financial industry may "churn" profits by engaging in excessive and unnecessary trades in a client's investment account to generate artificially high commissions or fees, Defendants have employed software to create extensive, artificial engagement within a network of commonly-owned and controlled accounts to fraudulently generate payouts to themselves from the Creator Revenue Sharing Program. This type of fraudulent activity is prohibited on the X platform.

7.    Through their criminal scheme, Defendants and their Enterprise have fraudulently diverted funds from the Creator Revenue Sharing Program, which is supported by a dedicated and finite pool of money, away from deserving creators. Beyond this financial impact, Defendants' conduct has harmed X's reputation and customer relationships by introducing low-quality content to the platform and disincentivizing participation in the Creator Revenue Sharing Program.

8.    X brings this action to obtain injunctive relief to disrupt the Defendants' ongoing criminal scheme and to recover damages for Defendants': (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of Title II of the Electronic Communications Privacy Act (a/k/a the Stored Communications Act) ("SCA"); (3) infringements and other misappropriations of X's valuable trademarks in violation of the Lanham Act and Texas statutory and common law; (4) fraud; (5) numerous breaches of the X Creator Revenue Sharing Terms (which includes the X Terms of Service); (6) conversion of X's property; and (7) unjust

enrichment.

## **PARTIES**

9.      Plaintiff X Corp. is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Bastrop, Texas.

10.      Defendants are located in Vietnam. Defendants entered fraudulent names and used fake user account information on X. Defendants' identification cards below ***were not provided to X***. Defendants provided them to external payment platforms, like PingPong and Payoneer, which are not affiliated with X. Defendants' true information and identification cards were obtained from PingPong and Payoneer through a detailed investigation and court proceedings conducted by X.

11.      Defendant **Do Minh Thang** is a natural person who is believed to reside at 121A Ngõ 68, Tổ 9, Phường Quan Hoa, Quận Cầu Giấy, Thành phố Hà Nội, 12000, Vietnam.

**Figure 1: Do Minh Thang**








12.     Defendant **Phan Ngoc Tuan** is a natural person who is believed to reside in Thị Tứ

Bố Thối, Xã Hồng Tiến, Huyện Khoái Châu, Tỉnh Hưng Yên, 16000, Vietnam.

**Figure 2: Phan Ngoc Tuan**








13.    Defendant **Nguyen Ngoc Thanh** (a/k/a "**Thanh Nguyen**") is a natural person who is believed to reside in TDP Lợi Thịnh, Phường Cam Lợi, Thành phố Cam Ranh, Tỉnh Khánh Hòa, 57800, Vietnam.

**Figure 3: Thanh Nguyen**








14.    Defendant **Le Dinh Chung** (a/k/a "**David Le**") is a natural person who is believed to reside in Apartment 0407, Building DV04, Rose Town, Số 79 Đường Ngọc Hồi, Phường Hoàng Liệt, Quận Hoàng Mai, Hà Nội, 12000, Vietnam.

**Figure 4: David Le**



15.    Defendant **Nguyen Nhu Duc** (a/k/a "**Duc Nguyen**"), also known as "Đức xỐp," is a natural person who is believed to reside in Trai Chuoi, Xã Đồng Kỳ, Huyện Yên Thế, Tỉnh Bắc Giang, 26700, Vietnam.

**Figure 5: Duc Nguyen**








16.    Defendant **Nguyen Viet Kieu** (a/k/a "**Kieu Nguyen**") is a natural person who is believed to reside at Cụm 5, Xã Tân Lập, Huyện Đan Phượng, Thành phố Hà Nội, 12000, and at 96 Đường Sông Nhuệ, Xã Tân Lập, Huyện Đan Phượng, Thành phố Hà Nội, 12000, Vietnam.

**Figure 6: Kieu Nguyen**





17.     Defendant **Do Viet Khanh** (a/k/a "**Khanh Do**") is a natural person who is believed to reside at Đội 13, Xã Liên Hợp, Huyện Chương Mỹ, Thành phố Hà Nội, 12000, Vietnam.

**Figure 7: Khanh Do**







18.    Defendant **Do Xuan Long** (a/k/a "**Long Do**") is a natural person who is believed to reside in Xã Gia Khánh, Huyện Gia Lộc, Tinh Hải Dương, 17000, Vietnam.

**Figure 8: Long Do**







19.     Defendants John Doe Nos. 1-25 are persons of unknown citizenship and/or who, upon information and belief are citizens of Vietnam, and who perpetrated the wrongdoing alleged herein, along with the Defendants named above.

20.     The above-named Defendants have conspired with at least each other—and possibly with Defendants John Doe Nos. 1-25, who have not yet been identified by X—in a pattern of racketeering activity, including by agreeing to commit, and committing, thousands of predicate racketeering acts of wire fraud since at least 2023. Each Defendant has participated in the operation or management of the Enterprise and has engaged in related criminal acts causing harm to X, its users, and the public.

21.     The Defendants and their Enterprise have perpetrated these crimes in part by the predicate wire fraud acts discussed below. Each Defendant has participated in at least two predicate acts of wire fraud.

22.     On information and belief, the actions and omissions alleged herein were actions that Defendants individually and collectively authorized, controlled, directed, or had the ability to authorize, control, or direct, or were actions and omissions each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Defendant is liable. Each Defendant aided and abetted the actions and omissions of their co-Defendants, in that each Defendant had knowledge of those actions and omissions, provided assistance, and benefited from those actions and omissions, in whole or in part. Each Defendant was the agent of every other Defendant, and in perpetrating the conduct hereinafter alleged, was acting within the course and scope of such agency and with permission and consent of the other Defendants.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists, and the amount in controversy exceeds $75,000. Plaintiff X Corp. is incorporated in Nevada with its principal place of business in Texas.

24.     This Court also has jurisdiction over X's federal claims pursuant to 28 U.S.C. § 1331. In addition, this Court has jurisdiction over X's federal Lanham Act claims pursuant to 28 U.S.C. § 1338 and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over X's state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution.

25.     This Court has personal jurisdiction over Defendants because Defendants, through their use of multiple accounts on X, expressly consented to X's Terms of Service, which require all disputes related to the X platform or Terms of Service "be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas,

United States." As part of that agreement, Defendants also consented to personal jurisdiction in Texas. The Terms of Service state that "you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum."

26.     This Court also has personal jurisdiction over Defendants because they agreed to X's Creator Revenue Sharing Terms, which provide that, with respect to "any disputes, claims, or controversies arising from fraud" ("Exempted Disputes"), "in its sole discretion, X may bring any Exempted Dispute we have against you in any competent court in the United States."

27.     Additionally, this Court has personal jurisdiction over Defendants, because they knowingly directed their unlawful conduct to Texas and Texas residents. Defendants have targeted X, which has its principal place of business in Texas, thereby injuring X, its users, and the public within this District.

28.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of X's claims is situated in this District, and a substantial part of the harm caused by Defendants occurred here. Venue is also proper in this Court under 28 U.S.C. § 1391(c)(3) because Defendants are natural persons who reside outside of the United States and may therefore be sued in any judicial district. Moreover, venue is proper in this Court under 28 U.S.C. § 1391(b) and (c), because Defendants are subject to personal jurisdiction in the Northern District of Texas. Venue is also proper in this Court because, by agreeing to X's Terms of Service and the Creator Revenue Sharing Terms, Defendants consented to litigate in this forum and have waived any objection as to inconvenient forum.

## FACTS

**A.    X's Market-Leading Services, Reputation, and Trademarks**

29.    X Corp. owns and operates the social media platform X, accessible through X.com, twitter.com, and various mobile and online applications.

30.    The X platform was previously known as "Twitter," which had registered trademarks representing the quality of its brand and the service it provided, including the highly distinctive Twitter blue bird design mark (the "Twitter Trademark"). Twitter made substantial investments of time and effort in the promotion of the Twitter Trademark. A copy of the trademark registration for the Twitter Trademark is attached as **Exhibit 10** to this Complaint.

31.    Plaintiff's use of the Twitter Trademark in interstate commerce has been extensive, continuous, and substantially exclusive. Through the use of the Twitter Trademark, its ubiquitous nature, and the platform's substantial user base, the Twitter Trademark is highly distinctive and widely recognized among consumers. The Twitter Trademark is famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Texas Business and Commerce Code Section 16.103.

32.    In July 2023, Twitter was rebranded to X. X allows users to create, distribute, and discover content. X provides a platform for users to create and share ideas and information instantly through various product features, including its Creator Revenue Sharing Program. X enjoys significant, far-reaching popularity. Based on near-universal consumer recognition, as well as extensive and continuous media coverage of and engagement with the X platform, the X mark (the "X Trademark") is highly distinctive and widely recognized among consumers. The X Trademark is famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Texas Business and Commerce Code Section 16.103. A copy of the X Trademark is below:



**B.    X's Creator Revenue Sharing Program**

33.    X's Creator Revenue Sharing Program is designed to allow legitimate users on the X platform an opportunity to monetize the content they create by allocating them a portion of X's revenue based on the level of engagement their posts generate from other users.[3] It is part of X's effort to help people earn a living directly on X, while incentivizing the creation of new, informative, and interesting content. In other words, the program is intended to reward content creators for their contributions and to motivate their active participation on the platform. The more engagement that creators receive from their content on the X platform, the more money they are entitled to as part of the Creator Revenue Sharing Program (i.e., users receive more funds if their content generates a lot of "likes" or is "reposted" by other accounts on the platform).

34.    To participate in X's Creator Revenue Sharing Program, users must meet certain criteria: (1) they must be subscribed to either X Premium[4] or Verified Organizations[5]; (2) their posts on X must have generated more than five million organic impressions cumulatively in the three preceding months; (3) they must have more than 500 eligible followers on the platform; (4) their X account must be compliant with X's Terms of Service and all associated policies; and

---

[3] *Creator Revenue Sharing*, X, https://help.x.com/en/using-x/creator-revenue-sharing (**Exh. 1**).

[4] X Premium is an opt-in, paid subscription service that offers additional features to improve users' experience on X. *About X Premium*, https://help.x.com/en/using-x/x-premium (**Exh. 2**).

[5] Verified Organizations is a subscription on X for businesses, governments, and nonprofits. *About X Verified Organizations*, https://help.x.com/en/using-x/verified-organizations (**Exh. 3**).

(5) they must link their X account with X's payment processor, Stripe, Inc. ("Stripe"), in order to receive payments.[6] Once payment is made to a user's Stripe account, the user can then transfer the funds externally, out of Stripe, to a linked bank account.

## C.    Defendants Have Stolen from X's Creator Revenue Sharing Program

35.    Based on detailed investigations conducted by X, Defendants control the cybercriminal ring known as "XGPT" or "MakemoneywithX," which systematically manipulates X platform engagement metrics and engages in automated and scripted behavior on X to fraudulently receive payouts from X's Creator Revenue Sharing Program. Defendants' eligibility for participation in the Creator Revenue Sharing Program is based on fraudulent activity.

36.    Upon information and belief, Defendants use stolen identities of United States citizens, including stolen U.S. drivers' licenses and the identification cards of U.S. citizens, to perpetrate their fraudulent scheme.

37.    Defendants' scheme relies on automation tools that orchestrate and script browsing activity. Upon information and belief, Defendants use these tools to automate scripting behavior on numerous platforms, including Google, Facebook, Instagram, and Telegram. Defendants also sell these automation tools to others in furtherance of their scheme.

38.    For instance, Defendants advertise and sell a tool called the "XGPT Tool" that automates account interactions on various platforms, including X, to contribute to manipulated engagement metrics. Each of the Defendants is connected to the XGPT Tool. Do Minh Thang, David Le, Duc Nguyen, Thanh Nguyen, and others in the Enterprise have posted YouTube videos demonstrating the XGPT Tool and have used social media to promote it. Purchases of the XGPT

---

[6] Effective May 22, 2024, users have also been required to successfully complete a more rigorous identity verification process to participate in the Creator Revenue Sharing Program.

Tool are directed to Phan Ngoc Tuan's bank account at Techcombank (Vietnam Technological and Commercial Joint Stock Bank), and the tool is promoted and sold by others in the Enterprise.

39.     To perpetrate their scheme, in order to receive payments fraudulently from X's Creator Revenue Sharing Program, Defendants used networks of inauthentic X Premium accounts to engage in coordinated platform manipulation. Defendants used those accounts to programmatically post computer-generated content, and then "like," "repost," and otherwise artificially engage with each other's content, all for the purpose of deceiving X into paying out funds to Defendants to which Defendants were not entitled.

40.     The earnings that Defendants unlawfully and fraudulently obtained through their manipulation of engagement metrics and violations of X's policies were then transferred, via their Stripe accounts, to a set of common external bank accounts controlled by Defendants. Through detailed investigation and information provided by Stripe, X determined that Defendants' X Premium accounts were connected, through Stripe, to at least 125 external bank accounts linked to the Defendants.

41.     On information and belief, Defendants created the at-issue Stripe accounts using the names, physical addresses, and Social Security numbers of innocent United States citizens, whose personal information has been compromised through unknown means. Specifically, on information and belief, Defendants created Stripe accounts and linked them to external U.S. bank accounts and third-party payment platforms through the fraudulent use of U.S. citizens' identification cards and U.S. drivers' licenses. Defendant Do Minh Thang even appears in a video that X identified during its investigation, where he and other Defendants demonstrate how to set up Stripe accounts using the compromised information of United States citizens.

42.     Defendants linked their Stripe accounts to U.S. bank accounts residing at Citibank, Wells Fargo Bank, JPMorgan Chase Bank, and First Century Bank. The accounts at those U.S. financial institutions are virtual bank accounts that are associated with Defendants' accounts on external payment platforms like PingPong Global Solutions Inc. ("PingPong"), which has an office in Vietnam.

43.     Using those U.S. bank accounts and external payment platforms, Defendants transferred the fraudulently obtained funds to Vietnamese bank accounts held in their names.[7]

44.     Specifically, on information and belief:

    a.  at least 919 payments were made in furtherance of the scheme using the bank accounts of Do Minh Thang;

    b.  at least 148 payments were made in furtherance of the scheme using the bank accounts of Phan Ngoc Tuan;

    c.  at least 59 payments were made in furtherance of the scheme using the bank accounts of Thanh Nguyen;

    d.  at least 100 payments were made in furtherance of the scheme using the bank accounts of Duc Nguyen;

    e.  at least 76 payments were made in furtherance of the scheme using the bank accounts of Kieu Nguyen;

    f.  at least 413 payments were made in furtherance of the scheme using the bank accounts of Khanh Do; and

---

[7] X's investigation has revealed that Defendants transferred the funds to specified bank accounts at Asia Commercial Joint Stock Bank (ACB), Joint Stock Commercial Bank for Foreign Trade of Vietnam (Vietcombank), Military Commercial Joint Stock Bank (MB Bank), Orient Commercial Joint Stock Bank (OCB), Saigon Thuong Tin Commercial Joint Stock Bank (Sacombank), Tien Phong Commercial Joint Stock Bank (TPBank), Vietnam Joint Stock Commercial Bank for Industry and Trade (Vietinbank), Vietnam Maritime Commercial Joint Stock Bank (MSB), and Vietnam Technological and Commercial Joint Stock Bank (Techcombank).

g.  at least 54 payments were made in furtherance of the scheme using the bank accounts of Long Do.

45.    Defendants also made payments to one another on external payment platforms, including PingPong, before transferring the stolen funds to Vietnamese bank accounts.

**D.    Defendants' Links to the Fraud and to One Another**

46.    Further exemplifying the interconnectedness of the Defendants' Enterprise is that, in furtherance of the scheme, Defendants engage with each other on various social media and communication platforms and make payments to one another. Defendants use various websites—including YouTube, TikTok, Telegram, Discord, Facebook, Instagram, and X—to advertise, promote, and onboard new members into the Enterprise to perpetrate their fraudulent scheme, and to sell tools that automate scripting behavior on those websites.

47.    One such platform is a YouTube channel called "Kiến Thức Crypto9x."[8] At the time of this Complaint, that YouTube channel had approximately 7,500 subscribers, included approximately 468 videos, and had over 131,000 views. Videos published by Defendants on that YouTube channel and identified by X during its investigation reveal that the videos are narrated by Do Minh Thang, Phan Ngoc Tuan, David Le, Duc Nguyen, and others in the Enterprise.

48.    These videos instruct others on how to (i) manipulate engagement metrics on X, Facebook, Instagram, Telegram, and other platforms; (ii) obtain payouts fraudulently from X's Creator Revenue Sharing Program, as well as from other platforms; (iii) create payout accounts using U.S. banks and external payment platforms; and (iv) obtain the stolen identities and information of United States citizens to perpetuate their scheme.

---

[8] https://www.youtube.com/@KienThucCrypto9x.

23







49.     These YouTube videos direct viewers to Defendants' Telegram accounts, where they sell the automated tools that they market to manipulate engagement metrics on numerous platforms, including X, Google, Facebook, Instagram, and Telegram.

50.     Further, Defendants use TikTok to promote and perpetrate their scheme, including https://www.tiktok.com/@kienthuccrypto9x and https://www.tiktok.com/@makemoneywithxgpt. At the time of this Complaint, the @kienthuccrypto9x account had nearly 5,000 followers, and the @makemoneywithxgpt account had more than 1,200 followers.

51.     Defendants also use Facebook groups and Facebook pages to promote their scheme and onboard new members into the Enterprise. One such group is "Kiếm tiền từ Threads," which is administered and moderated by Do Minh Thang, Phan Ngoc Tuan, and Thanh Nguyen, among others, and which, at the time of this Complaint, had 7,800 members.[9]

---

[9] https://www.facebook.com/groups/makemoneywithtwitterx.

52.     On information and belief, Defendants used this Facebook group to communicate about and perpetrate the fraud at issue in this case. As shown below, Do Minh Thang is the group's "Admin" and "Group expert"; Tuan Phan Ngoc is the group's "Admin"; and Thanh Nguyen and Kieu Nguyen are the group's "Moderators."[10]



53.     Another Facebook page used by Defendants to participate in and communicate about the fraudulent scheme is "MakemoneywithX-TikTok."[11] As of the date of this Complaint, this Facebook page had approximately 3,700 followers:

---

[10] https://www.facebook.com/groups/makemoneywithtwitterx/members/admins.

[11] https://www.facebook.com/xmmwxgpt.



54.    Defendants also use an array of Telegram channels to communicate about and engage in the fraudulent scheme. On those Telegram channels, Defendants market and sell emulation tools that automate scripting behavior on X, Google, Facebook, Instagram, and Telegram.

55.    One such Telegram channel is "XGPT CHANNEL," where Defendants sell the automated tools to perpetrate the fraud:



56.    In one of the above posts, Do Minh Thang states, translated from Vietnamese: "The next update for XGPT tool is currently the top 1 tool for farming money on X. First of all, the price and profile will be very economical for you when using the new update. To use the new tool, you

must have a profile provided by the team (private server). We will meet tonight about the benefits of using the profile."

57.    In another Telegram post, Do Minh Thang states, translated from Vietnamese: "Currently X is scanning very strongly with the algorithm that checks in the replies section. Your cross-comments will be scanned and those accounts will be stopped from making money for that reason. All accounts that have not enabled monetization, please go to the replies section in your profile and delete all comments. Those who have not posted any comments can private message the support team to support spam comments or you can contact those who have been scanned to comment for you for a small fee."

58.    In a spreadsheet posted on the Telegram channel "XGPT CHANNEL," David Le and Thanh Nguyen list themselves as "admins and XGPT Support team," alongside directions on how to purchase the automation tool. On another Telegram channel called "Nhóm tương tác X," Duc Nguyen directs people to purchase the automation tool and has posted screenshots of payments that he fraudulently obtained from X's Creator Revenue Sharing Program.

59.    In these and related Telegram channels, Defendants instruct people to send money to Phan Ngoc Tuan's bank account to purchase the automated tools:





60.    Defendants also operate a Telegram channel called "XGPT Tool xmake moneywithX" to participate in and communicate about the fraudulent scheme. As of the time of this Complaint, that Telegram channel had 6,856 members.

61.    As shown below, Do Minh Thang is the owner of the Telegram channel "XGPT Tool xmake moneywithX," where he posts under the username "MrThăng | XmakemoneywithxGPT Tool." Phan Ngoc Tuan is the administrator of the channel, where he posts under the username "MR T Admin|X-GPT @linhmiu." Thanh Nguyen is the administrator of the channel, where he posts under the username "Nguyễn Thành." David Le is the moderator of the channel, where he posts under the username "David Lê | DCK GROUP." Duc Nguyen is a member of the channel, where he posts under the username "Đức xỐp." Kieu Nguyen is also a member of the channel, where he posts under the username "Kieu Crypto | X FINANCE."



62.    Another Telegram group titled "Kiếm tiền cùng XGPT," which is operated by Do Minh Thang and used by the Enterprise, had 4,450 members at the time of this Complaint.

63.    Across Defendants' various Telegram channels, Defendants post countless images of themselves committing the fraud at issue, including the following representative examples:







**E.    Defendants' Violations of X's Terms**

64.    Defendants' manipulation of X platform engagement metrics to defraud X is a clear breach of X's Creator Revenue Sharing Terms, which incorporate by reference X's Terms of Service.[12] Defendants agreed to X's Creator Revenue Sharing Terms when they joined the Creator Revenue Sharing Program, and they separately agreed to X's Terms of Service when they created and used their X accounts.

65.    Defendants' conduct also violates X's Terms of Service, which are incorporated by reference in the Creator Revenue Sharing Terms and state that users may not "work around any technical limitations in the software provided to [them] as part of the Services," "in any way use the Services to send altered, deceptive or false source-identifying information," "interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, . . . overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of

---

[12] *Creator Revenue Sharing Terms*, X, https://legal.x.com/en/creator-revenue-sharing-terms (**Exh. 4**). In addition to violating the Creator Revenue Sharing Terms, Defendants' actions also violated X's Ads Revenue Sharing Terms, which were in effect until November 8, 2024.

Content in such a manner as to interfere with or create an undue burden on the Services," "facilitate or assist others in violating these Terms, including by distributing products or services that enable or encourage violation of these Terms," or "engage in any conduct that violates our Platform Manipulation and Spam Policy or any other Rules and Policies."[13]

66.    Defendants' conduct also violates X's Authenticity Policy, which is incorporated by reference in the Creator Revenue Sharing Terms and prohibits engaging in "any activity that attempts to manipulate our platform or disrupt our services through inauthentic accounts, behaviors or content," "coordinated inauthentic activity that artificially influences conversations or disrupts X," "behaviors that manipulate X or artificially impact how content is discovered and amplified," using "X engagement features to artificially impact traffic or disrupt people's experience," operating "multiple accounts that post substantially similar or identical content to one another," operating "multiple accounts that interact with the same or substantially similar content or in order to inflate or manipulate the prominence of content and/or accounts," "coordinating to exchange engagement in any X features, such as Likes, Polls, Replies, Reposts, Lists, Views, or Follows," "creat[ing], operat[ing], or mass-register[ing] accounts that are not legitimate, genuine and transparent as to their source, identity, and popularity," "us[ing] manufactured identities to engage in disruptive or deceptive behavior," "impersonat[ing] other identities of individuals, groups, or organizations to deceive others," "engag[ing] in scam tactics to obtain money, property, or private information," engaging in "inauthentic activity that undermines the integrity of X," and "[a]ttempting to evade X enforcement actions."[14]

---

[13] *Terms of Service*, X, https://x.com/en/tos (**Exh. 5**). The Terms of Service are also available in Vietnamese on X's website, https://x.com/vi/tos.

[14] *Authenticity Policy*, X, https://help.x.com/en/rules-and-policies/authenticity (**Exh. 6**).

67.    Defendants' conduct also violated X's Platform Manipulation and Spam Policy, which prohibited Defendants from "artificially inflat[ing] [their] own or others' followers or engagement," "creat[ing] multiple accounts to engage with the same posts, accounts, or polls," "creat[ing] multiple accounts to misuse the mention/reply feature," and "creat[ing] multiple accounts to boost or amplify one of [their] own accounts by misusing engagement features (likes, reposts)."[15] Defendants' conduct also breached X's Misleading and Deceptive Identities Policy, which states that users may not "pose as an existing person, group, or organization to mislead others about who [they] are or who [they] represent" or "use a fake identity to deceive others."[16] Defendants' conduct likewise breached X's Financial Scam Policy, which states that users may not use "X's services in a manner intended to artificially amplify . . . information or engage in behavior that manipulates or disrupts people's experience on X" or use "scam tactics on X to obtain money."[17]

68.    Defendants are aware that their conduct violates the X Creator Revenue Sharing Terms, the X Terms of Service, and other of X's Rules. For instance, upon information and belief, to avoid detection, Defendants routinely abandoned their account networks and created new ones in order to continue their fraud.

69.    Defendants' fraudulent, intentional, and unlawful conduct has undermined the fairness and integrity of X's Creator Revenue Sharing Program, effectively diminishing the value of X's product. Defendants' conduct has also harmed X's other users by diminishing the quality

---

[15] X *Platform Manipulation and Spam Policy*, which was consolidated into X's Authenticity Policy in January 2025 (**Exh. 7**).

[16] X *Misleading and Deceptive Identities Policy*, which was consolidated into X's Authenticity Policy in January 2025 (**Exh. 8**).

[17] X *Financial Scam Policy*, which was consolidated into X's Authenticity Policy in January 2025 (**Exh. 9**).

of their experience through the promotion of inauthentic, low-value content. In addition, Defendants' conduct harmed X users because the Creator Revenue Sharing Program pulls funds from a finite pool, meaning that Defendants fraudulently diverted revenue that would have been paid to deserving creators if not for Defendants' fraudulent conduct. Defendants' conduct thus harmed X's reputation and deprived it of the goodwill of its subscribers. Moreover, Defendants' conduct interfered with and impaired the intended operation of the X service, creating undue burden on its systems, and caused X to divert resources to investigate and remediate Defendants' fraudulent activities.

## F.    Defendants' Exploitation of X's Trademarks

70.    In marketing materials that promote the illicit tools used to perpetrate the fraud and explain how to use them, the Enterprise, without X's authorization, misappropriates the Twitter and X Trademarks.

71.    Specifically, the Enterprise misuses the X Trademark in thumbnails for YouTube videos posted by Defendants that provide instructions for how the XGPT Tool functions and for onboarding to and participation in the Enterprise, as shown below:

 

72.    Defendants further misuse the Twitter and X Trademarks in marketing material graphics that promote the Enterprise and their illicit tools. On their Facebook groups and Telegram channels, Defendants posted the following images misusing the Twitter and X Trademarks:












**XGPT TOOL xmake moneywithX**

3 431 members, 68 online

Make money with XGPT Tool
Mua bán hãy liên hệ admin
Channel : https://t.me/xgptchannel
Group Pixels: https://t.me/pixelstool

VIEW IN TELEGRAM

73.    On his X account @davidle91983717, Defendant David Le posted the promotional

graphics below to market Defendants' illicit tools, and he further marketed and sold those tools

through the Telegram channels the Defendants used in their scheme:




 

74.     Defendants have abused the Twitter and X Trademarks by creating in these promotional and instructional materials the false appearance of an affiliation between and among the Enterprise, X, and Twitter.

## FIRST CAUSE OF ACTION

**(Violations of the Racketeer Influenced and Corrupt Organizations Act)**
**(18 U.S.C. §§ 1962(c)–(d))**

75.     X incorporates by reference each and every allegation set forth above.

76.     Defendants are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, namely the Enterprise, and have conducted their affairs through a pattern of racketeering activity, with such conduct and activities affecting interstate and foreign commerce.

77.     At all relevant times, the Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5) and 1962(c), with such conduct and activities affecting interstate and foreign commerce.

78.     Defendants have conducted their and the Enterprise's affairs through a pattern of racketeering activity affecting interstate and foreign commerce, including thousands of predicate acts of wire fraud in violation of 18 U.S.C. § 1343—incorporated as a RICO predicate act under 18 U.S.C. § 1961(1)(B)—that have affected and continue to affect interstate and foreign

commerce.

79.    Defendants, with intent to defraud and obtain money or property by means of false or fraudulent pretenses, have committed wire fraud in violation of 18 U.S.C. § 1343 by transmitting or causing to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, and signals for the purpose of executing fraudulent schemes. Defendants have violated the wire fraud statute in several ways, each instance of which constitutes a separate RICO predicate offense. Each Defendant has participated in at least two predicate acts of wire fraud.

80.    For example, the Defendants and their Enterprise committed wire fraud, in violation of 18 U.S.C. § 1343, each time Defendants collected on fraudulently obtained earnings from the Creator Revenue Sharing Program using fraudulently created Stripe accounts with identification information other than their own, and each time Defendants inauthentically manipulated their engagement metrics to fraudulently obtain payouts from X's Creator Revenue Sharing Program.

81.    In violation of 18 U.S.C. § 1962(d), each Defendant unlawfully, knowingly, and willfully agreed and conspired together and with others to violate 18 U.S.C. § 1962(c) as described above.

82.    Defendants knew they were engaged in a conspiracy to commit multiple predicate RICO offenses, including thousands of acts of wire fraud, and they knew the predicate offenses were part of such racketeering activity, and that their participation and agreement was necessary to allow the commission of this pattern of racketeering activity.

83.    X has been injured in its business and property by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), as described herein. These injuries are direct, proximate, and reasonably foreseeable results of these violations, which continue to harm X.

84.    Under 18 U.S.C. § 1964(c), X is entitled to recover and seeks treble damages, plus

costs and attorneys' fees from Defendants.

85.     X also seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, including without limitation disgorgement of Defendants' ill-gotten gains.

## SECOND CAUSE OF ACTION

**(Violations of the Stored Communications Act)**
**(18 U.S.C. § 2701)**

86.     X incorporates by reference each and every allegation set forth above.

87.     Accounts on X, as well as the servers used to operate the X platform, are facilities through which an electronic communication service is provided to X's users and customers.

88.     Defendants knowingly and intentionally accessed legitimate X accounts, as well as X's servers used to operate the X platform, without authorization or in excess of any authorization granted by X or any other party. Defendants did so by, *inter alia*, obtaining and using inauthentic X Premium accounts as part of their scheme to fraudulently take funds from X's Creator Revenue Sharing Program, in violation of X's Creator Revenue Sharing Terms and X's Terms of Service, both of which expressly forbid these practices.

89.     X seeks compensatory, statutory, and punitive damages, plus costs and attorneys' fees, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**(Trademark Infringement in Violation of Lanham Act, 15 U.S.C. § 1114 *et seq.*,**
**and Texas Common Law)**

90.     X incorporates by reference each and every allegation set forth above.

91.     Defendants have used X's trademarks—specifically the Twitter Trademark and the X Trademark—in interstate commerce without X's authorization.

92.     Defendants and their Enterprise have, willfully and without authorization, used X's trademarks to promote their Enterprise, including by making use of Plaintiff's federally registered

trademark associated with the social media platform Twitter, now known as X. Defendants have made use of these trademarks without X's permission in interstate commerce, including the federally registered trademark for Twitter. By doing so, Defendants' actions are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the fraudulent and unauthorized references to X's trademarks.

93.     As a result of their wrongful conduct, Defendants are liable to X for violations of the Lanham Act. Defendants' acts also infringe X's trademark rights in violation of Texas common law.

94.     As a direct result of Defendants' actions, X has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law and which will continue unless Defendants' actions are enjoined.

95.     Defendants' wrongful and unauthorized uses of X's trademarks to promote, market, or sell products and services constitute trademark infringement under 15 U.S.C. § 1114 *et seq.*, and Texas common law.

96.     X seeks injunctive relief and compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation, disgorgement of Defendants' ill-gotten gains.

## FOURTH CAUSE OF ACTION

**(False Designation of Origin, Federal False Advertising, and Unfair Competition in Violation of Lanham Act, 15 U.S.C. § 1125(a), and Texas Common Law)**

97.     X incorporates by reference each and every allegation set forth above.

98.     X's trademarks are distinctive, famous marks that are associated with X and exclusively identify its business, product, and services.

99.     Defendants, willfully and without authorization, make use of X's trademarks in

commerce. By doing so, Defendants create false designations of origin as to tainted X products that are likely to cause confusion, mistake, or deception.

100.    As a result of their wrongful conduct, Defendants are liable to X for their violations of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Texas common law.

101.    As a direct result of Defendants' actions, X has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

102.    X seeks injunctive relief and compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation, disgorgement of Defendants' ill-gotten gains.

## FIFTH CAUSE OF ACTION

**(Trademark Dilution in Violation of the Lanham Act, 15 U.S.C. § 1125(c), and Tex. Bus. & Com. Code § 16.103)**

103.    X incorporates by reference each and every allegation set forth above.

104.    X's trademarks are distinctive, famous marks that are associated with X and exclusively identify its businesses, products, and services.

105.    Defendants make unauthorized use of X's trademarks in commerce. By doing so, Defendants' willful actions are likely to cause dilution by tarnishment and/or dilution by blurring of X's trademarks.

106.    As a result of their wrongful conduct, Defendants are liable to X for their violations of the Lanham Act, 15 U.S.C. § 1125(c), and Tex. Bus. & Com. Code § 16.103.

107.    As a direct result of Defendants' actions, X has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

108.    X seeks injunctive relief and compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation, disgorgement of Defendants' ill-gotten gains.

### SIXTH CAUSE OF ACTION

**(Fraud)**

109.    X incorporates by reference each and every allegation set forth above.

110.    Through the conduct alleged herein, Defendants made numerous false representations to X, knowing the falsity thereof and intending for X to act on those misrepresentations. X in fact relied on those misrepresentations to make payments to Defendants under the Creator Revenue Sharing Program.

111.    Specifically, Defendants systematically manipulated X platform engagement metrics to deceive X into believing that Defendants were legitimate X users qualifying for payment under the Creator Revenue Sharing Program.

112.    For instance, to feign that they had generated the requisite amount of content engagement to qualify for payment under the Creator Revenue Sharing Program, Defendants used coordinated networks of inauthentic X accounts to programmatically post computer-generated content, and then "like," "repost," and otherwise artificially engage with each other's content. In other words, Defendants created the appearance of content engagement that, in actuality, did not exist.

113.    In addition, Defendants did so with the knowledge that they did not qualify for payment under the Creator Revenue Sharing Program, since, among other reasons, their conduct violated X's Creator Revenue Sharing Terms and X's Terms of Service, including X's Authenticity Policy, Platform Manipulation and Spam Policy, Misleading and Deceptive Identities Policy, and Financial Scam Policy. To avoid detection, Defendants routinely created new networks

of inauthentic accounts in order to continue perpetrating their fraud and other deceptive conduct.

114.    As a direct result of Defendants' fraud, X paid Defendants funds to which Defendants were not entitled.

115.    X seeks compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation, disgorgement of Defendants' ill-gotten gains.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract)

116.    X incorporates by reference each and every allegation set forth above.

117.    Defendants agreed to X's Creator Revenue Sharing Terms when they joined the Creator Revenue Sharing Program, which incorporates X's Terms of Service and other of X's formal policies. Defendants also separately agreed to X's Terms of Service when they created and used their X accounts.

118.    Defendants breached X's Creator Revenue Sharing Terms and X's Terms of Service by manipulating X platform engagement metrics to defraud X and obtain funds to which they were not entitled.

119.    Among Defendants' various other breaches described herein:

    a)    Defendants engaged in automated and scripted behavior, in contravention of the X Terms of Service, which prohibit, among other conduct, engaging in platform manipulation, attempting to work around X's technical limitations, interfering with X's intended operation, facilitating or assisting others in violating X's Terms of Service, and distributing products or services that enable or encourage the violation of X's Terms of Service.

    b)    Defendants' manipulation of engagement metrics breached X's Platform Manipulation and Spam Policy, which prohibits, among other conduct, the

artificial inflation of a user's followers or engagements.

c) Defendants' manipulation of engagement metrics breached X's Authenticity Policy, which prohibits, among other conduct, attempting to manipulate the X platform through inauthentic accounts, engaging in coordinated inauthentic activity, using X's services in a manner that is intended to artificially amplify information, and engaging in behavior that manipulates or disrupts the experience of other users on the X platform.

120.    X has been damaged by Defendants' breaches of X's Creator Revenue Sharing Terms, Terms of Service, Authenticity Policy, and other of X's Rules.

121.    As a result of these breaches, X seeks rescission, restitution, or compensatory damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Conversion)

122.    X incorporates by reference each and every allegation set forth above.

123.    X owns all rights, title, and interest in the funds that are to be distributed to content creators through the Creator Revenue Sharing Program. Defendants have unlawfully and without authorization interfered with, and have dispossessed X of control over, X's funds available for disbursement to deserving creators who qualify for and participate in the Creator Revenue Sharing Program.

124.    Defendants have unlawfully and without authorization taken and converted for their own purposes funds from X's Creator Revenue Sharing Program.

125.    X seeks compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation disgorgement of Defendants' ill-gotten gains.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

126.    X incorporates by reference each and every allegation set forth above.

127.    The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at the expense of X, in violation of the common law.

128.    Defendants have been enriched through their receipt of payouts obtained fraudulently by manipulating their content engagement metrics.

129.    Such enrichment has been at X's expense because Defendants have stolen funds from X to which they are not entitled; because Defendants' conduct has harmed the user experience on X by promoting inauthentic content, thus decreasing the value of X's product; and because the funds stolen by Defendants are funds that have been diverted away from deserving creators who would help create a good user experience on X.

130.    Upon information and belief, Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of that property.

131.    Retention by the Defendants of the profits they derived from their malfeasance, at X's expense, would be inequitable.

132.    X seeks compensatory, treble, and punitive damages in an amount to be proven at trial, including without limitation disgorgement of Defendants' ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, X Corp. respectfully requests that this Court enter judgment in X Corp.'s favor and against Defendants and grant the following relief:

A.    Enter judgment in favor of X Corp. against the Defendants;

B.    Declare that Defendants have violated RICO and the SCA;

C.    Declare that Defendants have infringed and diluted X Corp.'s trademarks;

D.    Order that all copies made or used in violation of X Corp.'s trademarks, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

E.    Declare that Defendants have defrauded X Corp.;

F.    Declare that Defendants' conduct has been willful and that Defendants have acted with fraud, malice, and oppression;

G.    Declare that Defendants have breached X's Creator Revenue Sharing Terms and X's Terms of Service, including X's Authenticity Policy, Platform Manipulation and Spam Policy, Misleading and Deceptive Identities Policy, and Financial Scam Policy;

H.    Declare that Defendants have converted X Corp.'s property;

I.    Declare that Defendants have been unjustly enriched at X Corp.'s expense;

J.    Enter a permanent injunction enjoining Defendants and their Enterprise's officers, directors, principals, agents, servants, employees, successors, and assigns and all persons and entities in active concert or participation with them, from engaging in any of the activity complained of herein or from causing any of the injury complained of herein and from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activity complained of herein or from causing any of the injury complained of herein;

K.    Enter judgment awarding X Corp. actual damages from Defendants adequate to compensate X Corp. for Defendants' activity complained of herein and for any injury complained of herein, including but not limited to, interest and costs, in an amount to be proven at trial;

L.    Enter judgment awarding X Corp. treble, punitive, compensatory, and restitutionary

damages;

M.    Enter judgment for X Corp. disgorging Defendants' profits;

N.    Enter judgment awarding X Corp. its attorneys' fees and costs; and

O.    Order such other relief that the Court deems just and reasonable.

## <u>DEMAND FOR JURY TRIAL</u>

X Corp. respectfully requests a trial by jury in this action of all issues so triable.


May 22, 2025                                */s/ John C. Sullivan*
                                            John C. Sullivan
                                            Texas Bar No. 24083920
                                            Jace R. Yarbrough
                                            Texas Bar No. 24110560
                                            S|L LAW PLLC
                                            610 Uptown Boulevard, Suite 2000
                                            Cedar Hill, TX 75104
                                            Telephone: 469.523.1351
                                            Facsimile: 469.613.0891
                                            john.sullivan@slfirm.com
                                            jace.yarbrough@slfirm.com

                                            Joel Kurtzberg*
                                            New York Bar No. 2835007
                                            Brian T. Markley*
                                            New York Bar No. 3965563
                                            Jason Rozbruch*
                                            New York Bar No. 5753637
                                            CAHILL GORDON & REINDEL LLP
                                            32 Old Slip
                                            New York, NY 10005
                                            Telephone: 212.701.3120
                                            jkurtzberg@cahill.com
                                            bmarkley@cahill.com
                                            jrozbruch@cahill.com

                                                * *pro hac vice* forthcoming

                                            *Attorneys for Plaintiff X Corp.*